# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| TRANEL MCCOY, | : |
| | : |
| Petitioner, | : |
| | : |
| v. | : No. 3:09cv1960 (MRK) |
| | : |
| UNITED STATES OF AMERICA, | : |
| | : |
| Respondent. | : |

## RULING AND ORDER

On May 19, 2010, this Court issued a Ruling and Order denying – with one exception – the claims in Petitioner Tranel McCoy's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [doc. # 1]. *See McCoy v. United States*, No. 3:09cv1960 (MRK), 2010 WL 2011144 (D. Conn. May 19, 2010) ("*McCoy III*"). One of Mr. McCoy's claims was that his sentence was incorrect because he should not have been subject to a consecutive mandatory five-year minimum sentence under 18 U.S.C. § 924(c)(1)(A). In its Ruling and Order, the Court explained that because the Supreme Court had recently granted *certiorari* in two cases relevant to Mr. McCoy's § 924(c) sentencing argument, *see United States v. Abbott*, 574 F.3d 203 (3d Cir. 2009), *cert. granted*, 130 S. Ct. 1284 (Jan. 25, 2010); *United States v. Gould*, 529 F.3d 274 (5th Cir. 2008), *cert. granted*, 130 S. Ct. 1284 (Jan. 25, 2010), the Court would await a decision from the Supreme Court in those cases, after which Mr. McCoy could renew his § 2255 petition regarding his sentence.

Mr. McCoy never renewed his petition with regard to the 924(c) sentencing issue. However, on October 26, 2010 – a few weeks before the Supreme Court issued its decisions in *Abbott* and *Gould*, *see Abbott v. United States*, 131 S. Ct. 18 (2010) – Mr. McCoy moved to file

an amended § 2255 petition. On February 16, 2011, the Court issued an Order [doc. # 22] granting that motion. Mr. McCoy filed his amended § 2255 petition on March 17, 2011. *See* Amended Mot. to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [doc. # 23]. In his amended petition, Mr. McCoy raises two claims. First, Mr. McCoy asserts that his sentences were erroneously based upon a second offender enhancement, *see* 21 U.S.C. § 851, that increased his mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B) from five years to ten years. Second, Mr. McCoy asserts that his trial counsel was ineffective for failing to object to the second offender enhancement. On March 18, 2011, the Court issued an Order [doc. # 24] directing the Government to show cause why Mr. McCoy's amended petition should not be granted, and the Government filed its Response [doc. # 25] on May 17, 2011. Mr. McCoy filed a Reply [doc. # 27] to the Government's Response on June 17, 2011.

For reasons that follow, Mr. McCoy's amended petition is denied.

**I.**

The Court assumes the parties' familiarity with the factual background of this case and will limit its summary to those facts relevant to Mr. McCoy's amended petition. Additional facts will be related as needed when the Court turns to Mr. McCoy's claims. Those seeking a more detailed discussion of the case's facts and procedural history should refer to the Court's previous Ruling and Order. *See McCoy III*, 2010 WL 2011144, at *1-*5.

In August 2006, a jury convicted Mr. McCoy on charges contained in two separate indictments. Mr. McCoy was convicted of Count One of the Superseding Indictment in the first case, No. 3:04cr336 (MRK) (D. Conn. filed Dec. 14, 2004), which charged him with conspiracy to possess with intent to distribute, and to distribute, five grams or more of cocaine base; and on Counts One through Three of a separate Indictment in the other case, No. 3:06cr100 (MRK) (D.

Conn. filed Apr. 12, 2006), which charged him with possession with intent to distribute five grams or more of cocaine base, possession with intent to distribute marijuana, and possession of a firearm in furtherance of a drug trafficking crime.

Before trial, the Government had filed a second offender notice pursuant to 21 U.S.C. § 851. In that notice, the Government indicated its intent to rely on a prior felony drug conviction that would subject Mr. McCoy to the enhanced sentencing provisions of 21 U.S.C. § 841(b). The offense noted by the Government was Mr. McCoy's 1996 conviction for sale of narcotics in violation of Connecticut General Statutes § 21a-277(a) in the Connecticut Superior Court. In that 1996 case, Mr. McCoy had pled guilty under the *Alford* doctrine. *See North Carolina v. Alford*, 400 U.S. 25 (1970). Under 21 U.S.C. §§ 841(b)(1), 846, and 851, the statutory minimum term of imprisonment for possession with intent to distribute five grams or more of cocaine base after having been convicted of a prior felony drug offense, and for conspiracy to possess with intent to distribute or to distribute five grams or more of cocaine base after having been convicted of a prior felony drug offense, is ten years. In the absence of a second offender enhancement, Mr. McCoy's statutory minimum sentence for the cocaine base counts was five years. *See* 21 U.S.C. §§ 841(b)(1)(B), 846.

Mr. McCoy was sentenced by this Court on February 13, 2007. Mr. McCoy was in Criminal History Category II with a base offense level of 30 for Count One of the Superseding Indictment in the 3:04cr336 case, and Counts One and Two of the Indictment in the 3:06cr100 case. Under the United States Sentencing Commission Guidelines ("the Guidelines") in effect on the date of sentencing, a defendant in Criminal History Category II with a total offense level of 30 faced a sentence of 108 to 135 months imprisonment, assuming no higher statutory minimum. A statutory minimum of ten years increased that Guidelines range to 120 to 135 months.

However, because Mr. McCoy had committed the felony drug offenses in the 3:06cr100 case while on release following his arrest in the 3:04cr336 case, he was subject to a statutory sentencing enhancement under 18 U.S.C. § 3147. Under § 3C1.3 of the Guidelines, "[i]f a statutory sentencing enhancement under 18 U.S.C. § 3147 applies," the sentencing court should "increase the [defendant's] offense level by 3 levels."[1] On the date of Mr. McCoy's sentencing, the Guidelines range for an offense level of 33 in Criminal History Category II was 151 to 188 months. In addition, Mr. McCoy faced a mandatory, consecutive five-year term of imprisonment for possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A)(I). Therefore, Mr. McCoy's total effective Guidelines range was 211 to 248 months.

The Court ultimately imposed a non-Guidelines sentence of 181 months imprisonment and eight years supervised release. Specifically, in the 3:04cr336 case, Mr. McCoy was sentenced to a term of 120 months imprisonment, to run concurrently with his sentence on Counts One and Two in the 3:06cr100 case. In the 3:06r100 case, Mr. McCoy was sentenced to 120 months imprisonment on Counts One and Two, to run concurrently; to a term of 60 months on Count Three, to run consecutively to the sentence on Counts One and Two and the sentence imposed in case 3:04cr336; and, pursuant to 18 U.S.C. § 3147, one month of imprisonment, to run consecutively to the sentence imposed on Counts One, Two, and Three, and to the sentence imposed in case 3:04cr336.

The Court presumed, and the Government and defense counsel agreed, that Mr. McCoy faced a mandatory minimum of ten years imprisonment on the cocaine base counts. In its Judgment, the Court explained the non-Guidelines sentence as follows:

---

[1] In the version of the Guidelines in effect on November 1, 2005, this provision was set forth in § 2J1.7. Because the Pre-Sentence Report had relied on the Guidelines in effect as of November 1, 2005, the Court cited § 2J1.7 rather than § 3C1.3 in its Judgment.

> The Court imposed a non-Guidelines' sentence insofar as the violation of 18 U.S.C. § 3147 is concerned. . . . The Court concluded that a sentence of 181, or one additional month under 18 U.S.C. § 3147, was sufficient but not greater than necessary to achieve the purposes of a criminal sentence, taking into account all of the factors set forth in 18 U.S.C. § 3553(a), including defendant's relatively low criminal history category and his family circumstances. The Court did so, because the Government represented to the Court that it had filed the second offender notice, which increased defendant's mandatory minimum on the drug offenses, from 5 years (60 months) to ten years (120 months) because defendant had committed his second offense while on release. According to the Government, it would not have filed the second offender notice but for that fact since defendant's first offense was committed over 10 years before and while the defendant was 19. Thus, the Government stated that defendant would receive an additional 60 months imprisonment effectively because he had committed a felony while on release and further represented that no further increase in the length of defendant's sentence was needed for deterrence or any other purpose. Nonetheless, the Court concluded that 18 U.S.C. § 3147 requires the Court to impose at least some period of imprisonment when a defendant commits a felony offense while on release, which is why the Court imposed an additional month of imprisonment to run consecutively to all other sentences. Therefore, defendant received an effective total sentence of 181 months.

Judgment, *United States v. McCoy*, Nos. 3:04cr336 (MRK), 3:06cr100 (MRK) (D. Conn. Feb. 13, 2007), ECF No. 428 (3:04cr336), ECF No. 72 (3:06cr100).

The Court had previously denied Mr. McCoy's motion for acquittal, *see United States v. McCoy*, Nos. 3:04cr336, 3:06cr100, 2006 WL 3791390 (D. Conn. Dec. 21, 2006) ("*McCoy I*"), and after judgment was entered, Mr. McCoy appealed his conviction to the U.S. Court of Appeals for the Second Circuit, which affirmed in a summary order, *see United States v. McCoy*, 303 F. App'x 45 (2d Cir. 2008) (summary order) ("*McCoy II*"). In his direct appeal, Mr. McCoy did not raise either of the claims that he now asserts in his amended § 2255 petition.

## II.

To obtain collateral relief under 28 U.S.C. § 2255, the petitioner must show that his "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. "As a general rule, 'relief is available under § 2255 only for a constitutional error, a lack

of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Napoli*, 32 F.3d 31, 35 (2d Cir. 1994) (quotation marks and citations omitted) (quoting *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)). Constitutional errors will not be corrected through a writ of habeas corpus unless they have had a "substantial and injurious effect," that is, unless they have resulted in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637-38 (1993); *see also Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht* to a § 2255 petition).

"A motion under § 2255 is not a substitute for an appeal." *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007) (quotation marks and citation omitted). Where a § 2255 petitioner "failed properly to raise his claim on direct review, the writ [of habeas corpus] is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged . . . violation.'" *Reed v. Farley*, 512 U.S. 339, 354 (1994) (second alteration in original) (citations omitted).

Claims of constitutionally ineffective assistance of counsel are generally exempt from that procedural default rule. However, a person challenging his conviction or sentence on the basis of ineffective assistance of counsel bears the burden of proving that his counsel's representation was deficient, and he faces a high bar. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). In *Strickland*, the Supreme Court held that a defendant must establish: (1) that his counsel's performance "fell below an objective standard of reasonableness" and (2) that counsel's unprofessional errors actually prejudiced the defense. *Id.* at 688; *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997). The

6

*Strickland* standard is a rigorous one. *See Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001). "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (internal citations omitted) (quoting *Strickland*, 466 U.S. at 696-97). "The first prong [of the standard] – constitutional deficiency – is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, --- U.S. ---, 130 S. Ct. 1473, 1482 (2010) (quoting *Strickland*, 466 U.S. at 688). A determination of prejudice, however, "may be made with the benefit of hindsight." *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007).

With those standards in mind, the Court turns to consider Mr. McCoy's claims.

### III.

In his amended petition, Mr. McCoy asserts two claims for habeas relief:

1. Because Mr. McCoy's 1996 conviction was the result of an *Alford* plea, the Government could not establish that the 1996 conviction was for a "felony drug offense," and thus Mr. McCoy's sentence was illegal insofar as it was based on a second offender enhancement under 21 U.S.C. § 851.

2. Mr. McCoy received constitutionally ineffective assistance of counsel because his trial counsel did not object to application of the § 851 enhancement.

"The distinguishing feature of an *Alford* plea is that the defendant does not confirm the factual basis for the plea." *United States v. Savage*, 542 F.3d 959, 962 (2d Cir. 2008) (citing *State v. Faraday*, 268 Conn. 174, 204 (2004)). Therefore, to determine whether a conviction pursuant

to an *Alford* plea qualifies as a predicate offense for the purpose of a federal sentencing enhancement, a court must conduct a two-party inquiry known as the "modified categorical approach." *Id.* at 964. First, in the "categorical inquiry," the court must determine "whether the statute of the prior conviction criminalizes conduct that falls exclusively within the federal definition of a predicate offense." *Id.* "If so, 'there is no problem, because the conviction necessarily implies that the defendant has been found guilty of' a predicate offense." *Id.* (quoting *Taylor v. United States*, 495 U.S. 575, 599 (1990)). Second, "[i]f . . . the statute of the prior conviction criminalizes both predicate and non-predicate conduct, then the second part of the modified categorical inquiry requires that [the court] ask whether the government has shown that the plea 'necessarily' rested on a fact identifying the conviction as a predicate offense." *Id.* (quoting *Shepard v. United States*, 544 U.S. 13, 24 (2005)). The Government can only satisfy this second step in the inquiry if "the defendant's own admissions or accepted findings of fact" in the earlier case confirmed the factual basis for the plea. *Shepard*, 544 U.S. at 25; *see, e.g.*, *Tellado v. United States*, --- F. Supp. 2d ----, 2011 WL 2746123, at *2 (D. Conn. 2011).

Mr. McCoy's claim that his state court conviction for sale of narcotics did not support a § 851 enhancement under the modified categorical approach is based on a discrepancy between the Connecticut and federal drug schedules. The Government filed its § 851 notice on the presumption that Mr. McCoy's 1996 drug conviction was a "felony drug offense," which would warrant an increased mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B). The term "felony drug offense" is defined in the applicable section of the Controlled Substances Act ("CSA") as "an an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances."

21 U.S.C. § 802(44). Each of those four classes of compounds is itself a defined category of substance under the CSA. *See id.* § 802(17), (16), (41)(A), (9) (defining "narcotic drug," "marihuana," "anabolic steroid," and "depressant or stimulant substance," respectively). Those categories of substance are controlled in various places within the federal Schedules of Controlled Substances. *See* 21 C.F.R. §§ 1308.11-.15.

Connecticut General Statutes § 21a-277(a) prohibits the sale of "any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance." Connecticut General Statutes § 21a-243 authorizes the Commissioner of Consumer Protection to designate substances as controlled substances by regulation. Since 1987, Connecticut has criminalized conduct involving two obscure opiate derivatives, thenylfentanyl and benzylfentanyl, that were temporarily added to Schedule I of the CSA in 1985. *See* Conn. Agencies Regs. § 21a-243-7(a)(10); 50 Fed. Reg. 43698 (Oct. 29, 1985). However, the listing of thenylfentanyl and benzylfentanyl in the federal schedule expired after one year. *See* 21 U.S.C. § 811(h)(2). Thus, when Mr. McCoy was convicted as the result of an *Alford* plea in 1996, Connecticut General Statutes § 21a-277(a) criminalized some conduct that did not fall within the federal definition of a "felony drug offense." *See* Government's Resp. to Am. Pet. [doc. # 25] at 15. To establish that Mr. McCoy's state conviction qualified as a predicate triggering a § 851 sentence enhancement, the Government would have to rely on court documents "in which the factual basis for [Mr. McCoy's] plea was confirmed by the defendant." *Shepard*, 544 U.S. at 26.

Mr. McCoy argues – and the Government now concedes – that because he did not specifically admit to selling cocaine or another narcotic on the federal schedule during his plea colloquy in the Connecticut Superior Court in the 1996 case, the plea transcript and other court documents did not provide a sufficient basis for finding a predicate felony drug offense.

9

Nonetheless, the Government maintains that Mr. McCoy's amended petition must be denied because (1) the direct challenge to Mr. McCoy's sentence has been procedurally defaulted, and (2) defense counsel's failure to object to the second offender enhancement did not deprive Mr. McCoy of constitutionally effective assistance of counsel. The Court agrees with the Government.

## A.

The parties agree that because Mr. McCoy failed to raise his claim of a sentencing error on direct appeal, the claim is barred unless he can demonstrate either actual innocence or "'cause' for the default . . . and 'prejudice' that resulted from the alleged violation.'" Response to Am. Pet. [doc. # 25] at 7 (citing *Ciak v. United States*, 59 F.3d 296, 302 (2d Cir. 1995)); *see* Pet'r's Reply [doc. # 27] at 3. Mr. McCoy does not maintain that he is actually innocent. Instead, he argues that he "can overcome the procedural default because he can establish both 'cause' and 'prejudice.'" Pet'r's Reply [doc. # 27] at 3.

First, Mr. McCoy cannot establish "cause" for his default as that concept is applied in the governing case law. As Mr. McCoy correctly notes, "'cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule." *Id.* (quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "[A] showing that the . . . legal basis for a claim was not reasonably available to counsel . . . would constitute cause under this standard." *Id.* (quotation marks omitted) (quoting *Carrier*, 477 U.S. at 488). Mr. McCoy argues that his claims rely largely on changes in the law that

10

occurred after he was sentenced, *see* Pet'r's Reply [doc. # 27] at 5, and therefore that the remedy he seeks was not reasonably available at the time of his direct appeal. Specifically, Mr. McCoy notes that the Second Circuit issued its decision in *Savage* in 2008, and that the Office of the United States Attorney first conceded the discrepancy between the Connecticut and federal drug schedules in its June 29, 2009 Sentencing Memorandum in *United States v. Jackson*, No. 3:06cr151 (MRK) (D. Conn. Aug. 10, 2009).

Neither of those developments, however, created the legal basis for Mr. McCoy's sentencing claim – nor do they constitute evidence that the legal basis for his claim was not reasonably available at the time of Mr. McCoy's direct appeal. Mr. McCoy's claims are based on (1) the discrepancy between the Connecticut and federal drug schedules and (2) the standard – articulated by the Supreme Court in *Shepard* in 2005 – for determining whether a guilty plea "defined by a nongeneric statute necessarily admitted elements of the generic offense." *Shepard*, 544 U.S. at 26. The discrepancy between the Connecticut and federal drug schedules could have been observed by Mr. McCoy or his counsel at the time of his sentencing. Although the Second Circuit explained the "modified categorical approach" in new detail in *Savage*, 542 F.3d at 964-967, the inquiry it engaged in was simply a new application of the standards established by the Supreme Court in *Taylor* and *Shepard* and relied on by the Second Circuit in previous cases. *See, e.g.*, *Savage*, 542 F.3d at 967 (citing *Shepard*, 544 U.S. at 21; *United States v. Rosa*, 507 F.3d 142, 155 (2d Cir. 2007)); *id.* at 966 (citing *United States v. Green*, 480 F.3d 627, 632 (2d Cir. 2007)).

Although the Second Circuit's decision in *Savage* and the Government's concession in *Jackson* were certainly helpful to Mr. McCoy's claim, Mr. McCoy does not cite – and cannot cite – any precedent suggesting that the legal basis for his claim was not "reasonably available" prior

to those two developments. The Supreme Court and the Second Circuit have recognized a lack of favorable precedent as providing "cause" for a procedural default only where a petitioner's defaulted claim was "so *novel* that its legal basis [was] not reasonably available to counsel," *Reed v. Ross*, 468 U.S. 1, 16 (1984) (emphasis added); *see, e.g.*, *Rosario v. United States*, 164 F.3d 729, 733 (2d Cir. 1998) (noting that in *Bousley v. United States*, 523 U.S. 614 (1998), the Supreme Court rejected the petitioner's contention that "the legal basis for his claim was not reasonably available to counsel at the time his plea was entered" because the claim was not "novel" (quotation marks and citation omitted)). Indeed, even circuit precedent directly contrary to a petitioner's claim may not be sufficient "cause" for procedural default. *See Rosario*, 164 F.3d at 733. In *Triestman v. United States*, 124 F.3d 361 (2d Cir. 1997), the Second Circuit suggested in dicta that because "the broad definition of 'use' that was subsequently rejected by the Supreme Court in *Bailey* [*v. United States*, 516 U.S. 137 (1995)] was well-established in [the Second Circuit] . . . Triestman was justified in failing to challenge that definition on appeal." *Triestman*, 124 F.3d at 369 n.8. But the Second Circuit soon retracted that suggestion, noting that in *Bousley*, the Supreme Court rejected the notion that "a prisoner bringing a post-*Bailey* challenge to a pre-*Bailey* conviction [necessarily] could establish 'cause' for failing to assert the claim on direct review." *De Jesus v. United States*, 161 F.3d 99, 102 (2d Cir. 1998); *see Bousley*, 523 U.S. at 622 (explaining that at the time the petitioner's plea was entered, "the Federal Reporters were replete with cases involving challenges to the notion that 'use' is synonymous with mere 'possession'").

In this case, no unfavorable Supreme Court or circuit precedent stood in the way of Mr. McCoy raising his claim of a § 851 sentencing enhancement error on direct appeal. The Supreme Court decided *Shepard* almost two years before Mr. McCoy's sentencing and *Taylor* almost

12

seventeen years before Mr. McCoy's sentencing. Moreover, by the time Mr. McCoy was sentenced, even the more specific argument that a federal sentencing enhancement should not apply because of the discrepancy between the Connecticut and federal drug schedules was not novel. On March 5, 2007 – less than three weeks after Mr. McCoy's sentencing – Judge Droney concluded in *United States v. Madera*, 521 F. Supp. 2d 149 (D. Conn. 2007), that the defendant "ha[d] established that Connecticut bans substances [benzylfentanyl and thenylfentanyl] that are not federal controlled substances," and that because "the government ha[d] not established the nature of the substances that [the defendant] was accused of selling or possessing with intent to sell, the Court [could not] find that [the defendant's] three unspecified narcotics convictions were serious drug offenses" for the purposes of an Armed Career Criminal Act ("ACCA") enhancement. *Id.* at 157. Nor was *Madera* the first case in which a Second Circuit court considered an argument that Connecticut General Statutes § 21a-277(a) proscribes certain drugs that are not "controlled substances" under federal law. *See Gousse v. Ashcroft*, 339 F.3d 91, 98-101 (2d Cir. 2003) (discussing the immigration petitioner's argument that his conviction for violating Connecticut General Statutes § 21a-277(a) was not necessarily a conviction for "illicit trafficking in a controlled substance" under 8 U.S.C. § 1101(a)(43)(B) because the conviction was pursuant to an *Alford* plea and Connecticut law proscribed certain drugs not then on the federal controlled substance schedules). Because the legal basis for his claim of sentencing error was "reasonably available to counsel," Mr. McCoy cannot demonstrate "cause" for his procedural default. *Bousley*, 523 U.S. at 622 (quotation marks omitted) (quoting *Reed v. Ross*, 468 U.S. at 16).

Second, Mr. McCoy cannot establish that any prejudice resulted from the erroneous application of the § 851 second offender enhancement. The Supreme Court has not precisely

defined what constitutes "prejudice" under the procedural default standard in habeas cases, and in particular in habeas cases involving alleged sentencing errors. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) ("We leave open for resolution in future decisions the precise definition of the 'cause' -and- 'prejudice' standard. . . ."); *see also Curry v. Bennett*, Nos. 02-CV-3655 (JBW), 03-MISC-0066 (JBW), 2003 WL 22956980 (E.D.N.Y. Oct. 17, 2003) (noting that "the Supreme Court has not defined what it means by 'prejudice'" in the cause-and-prejudice standard for procedurally defaulted habeas claims). The Supreme Court has suggested that to demonstrate prejudice in the context of a procedurally defaulted claim, a habeas petitioner must convince the court "that 'there is a reasonable probability' that the result of the trial would have been different" but for the error at issue. *Strickler v. Greene*, 527 U.S. 263, 289 (1999) (applying the cause-and-prejudice standard to a state procedural default in a § 2254 habeas case). In other words, the question is whether, despite the error, "[the petitioner] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 289-90 (quotation marks omitted) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). That standard, though, presumes that the petitioner is challenging his conviction, not just the length of his sentence. It is not clear from the Supreme Court's decisions whether an error that merely increased a defendant's sentence by some amount could constitute "prejudice" in the procedural default context.

However, as Mr. McCoy points out, the Supreme Court has held that for Sixth Amendment purposes, a defendant suffers prejudice when he receives "any amount of [additional] actual jail time" as a result of his attorney's constitutionally deficient performance. *Glover v. United States*, 531 U.S. 198, 203 (2001). Under *Strickland* and *Glover*, then, a petitioner will be able to satisfy the prejudice prong of the standard for ineffective assistance of counsel claims if he can demonstrate a "reasonable probability" that, but for his counsel's

unprofessional errors, he would have received a lesser sentence. *Johnson v. United States*, 313 F.3d 815, 818 (2d Cir. 2002) (per curiam) (quotation marks omitted); *see also Lynn v. Bliden*, 443 F.3d 238, 248 (2d Cir. 2006) ("[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's alleged] errors." (quoting *Strickland*, 466 U.S. at 695-96)).

Assuming that the standard for determining whether a defendant suffered prejudice in the Sixth Amendment context is the same as the standard for determining whether a habeas petitioner suffered prejudice sufficient to excuse a procedural default, Mr. McCoy nonetheless fails to demonstrate that he was prejudiced by the Court's assumption that a second offender enhancement increased Mr. McCoy's statutory minimum sentence for the cocaine base offenses to 120 months. If neither the second offender enhancement *nor* the § 3147 enhancement were applicable, Mr. McCoy would have been subject to a Guidelines range of 108 to 135 months imprisonment on the drug offenses plus a consecutive 60 month sentence for his conviction of possession of a firearm in furtherance of a drug trafficking crime – a total effective Guidelines range of 168 to 195 months imprisonment. Mr. McCoy's sentence is almost exactly in the middle of that hypothetical range. However, whether or not the second offender enhancement applied, Mr. McCoy's sentence was in fact far below the applicable Guidelines range. Because of his 18 U.S.C. § 3147 violation and the corresponding 3-level enhancement under § 3C1.3 of the Guidelines, Mr. McCoy's Guidelines range was 211 to 248 months. In other words, the 181-month sentence Mr. McCoy received was thirty months shorter than the shortest sentence recommended by the Guidelines.

As the Court explained during the sentencing hearing and in its Judgment, the Court decided to apply a non-Guidelines sentence with respect to the § 3147 enhancement because the

Government represented that it only had decided to file a second offender notice because Mr. McCoy committed the offenses in the 3:06cr100 case while on release in the 3:04cr336 case and that it believed that a further increase in Mr. McCoy's sentence was not necessary. Had the second offender enhancement not applied, it is likely that the Government would have argued for a more significant § 3147 enhancement. Moreover, as the Court noted during the sentencing, had Mr. McCoy faced a lower statutory minimum, the Court would have imposed a much greater enhancement for Mr. McCoy's commission of offenses while on release. Mr. McCoy thus cannot demonstrate a reasonable probability that, but for the erroneous application of the second offender enhancement, he would have received a lesser sentence.

**B.**

Mr. McCoy's second claim is that he received ineffective assistance of counsel because his attorney failed to object to the application of the § 851 second offender enhancement. That claim also fails, as Mr. McCoy can satisfy neither prong of the *Strickland* standard.

First, Mr. McCoy has not demonstrated that his counsel's performance was unreasonable under "prevailing professional norms." *Strickland*, 466 U.S. at 688. Although, as the Court has already noted, the legal basis for Mr. McCoy's sentencing claim existed at the time he was sentenced, it is also true, as the Government observes, that "until the Second Circuit's decision in *Savage* and the sentencing before this Court in *Jackson*, defense counsel in this district had proceeded with the long-held belief that prior Connecticut convictions for sale of narcotics qualified categorically as controlled substance offenses under U.S.S.G. § 4B1.1 and felony drug offenses under 21 U.S.C. § 841(b)(1)." Resp. to Am. Pet. [doc. # 25] at 23; *see* Sarah French Russell, *Rethinking Recidivist Enhancements: The Role of Prior Drug Convictions in Federal Sentencing*, 43 U.C. Davis L. Rev. 1135, 1199 (2010) ("Until recently, federal defendants in

firearm, drug, and immigration cases in the District of Connecticut routinely had sentencing enhancements applied if they had prior convictions for violating Connecticut's drug distribution statute."). The first District of Connecticut decision to find that Connecticut's criminalization of conduct involving benzylfentanyl and thenylfentanyl had implications for a federal sentencing enhancement – an enhancement under the ACCA rather than 21 U.S.C. § 851 – was issued approximately three weeks after Mr. McCoy was sentenced. *See Madera*, 521 F. Supp. 2d 149. The Government did not make its concession, in *Jackson*, regarding the implications of Connecticut's criminalization of drugs not on the federal schedule for the § 851 second offender enhancement until June 2009. *See* Government's Memorandum on Section 851 Sentence Enhancement Issues, *United States v. Jackson*, No. 3:06cr151 (MRK) (D. Conn. June 29, 2009), ECF No. 107. Moreover, the Court notes that, in this case, Mr. McCoy faced a Guidelines range far above the statutory minimum sentence that resulted from application of the § 851 second offender enhancement, and Mr. McCoy's counsel argued persuasively for a non-Guidelines treatment of Mr. McCoy's commission of an offense while on release partly on the basis that Mr. McCoy was already receiving an enhancement under § 851. *See Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1497 (2011) (explaining that "[t]he Court of Appeals was required not simply to give the attorneys the benefit of the doubt, but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did" (quotation marks, alteration, and citations omitted)).

The Supreme Court recently has emphasized the strictness of the *Strickland* standard, and in particular its first prong – a showing that counsel's performance was constitutionally deficient. *See, e.g.*, *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 788 (2011) ("An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues

17

not presented at trial, and so the *Strickland* standard must be applied with scrupulous care . . . ."). As the Supreme Court has explained, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 690). Evaluated "from counsel's perspective at the time," *Strickland*, 466 U.S. at 689, the decision by Mr. McCoy's attorney not to object to the § 851 second offender enhancement was not unreasonable. Mr. McCoy's ineffective assistance of counsel claim thus fails under the first prong of the *Strickland* standard.

Second, largely for reasons already discussed, even if counsel's failure to object to the § 851 second offender enhancement was an unprofessional error – and the Court does not find that it was – Mr. McCoy cannot establish that he was prejudiced by that error. If the Government had conceded that the § 851 enhancement did not apply or the Court had refused to apply that enhancement on the basis of an objection from defense counsel, the Court would still have sentenced Mr. McCoy to a term that reflected Mr. McCoy's commission of the offenses in the 3:06cr100 case while on release in the 3:04cr336 case. As the Court explained when it sentenced Mr. McCoy, it viewed the § 851 enhancement and the additional one month applied under § 3147 as together reflecting an appropriate enhancement for Mr. McCoy's commission of crimes while on release. Because Mr. McCoy cannot demonstrate a reasonable probability that, but for counsel's failure to object to the § 851 enhancement, he would have received a shorter sentence of imprisonment, *see Johnson*, 313 F.3d at 818, his claim also fails under the second prong of the *Strickland* standard.

## IV.

Having rejected both of Mr. McCoy's claims for relief, the Court DENIES Mr. McCoy's amended § 2255 petition. The only remaining issue is whether to issue a Certificate of Appealability ("COA"). For a COA to issue, Mr. McCoy must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks and citation omitted). "Where a district court has rejected [a petitioner's] constitutional claim[] on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim[] debatable or wrong." *Id.* In this case, the Court is confident that the performance of Mr. McCoy's trial counsel was not constitutionally deficient and that Mr. McCoy was not prejudiced by his counsel's alleged error. However, the Court also believes that reasonable jurists could debate the Court's assessment of Mr. McCoy's ineffective assistance of counsel claim. *Compare Carter v. United States*, 731 F. Supp. 2d 262, 277-278 (D. Conn. 2010), *with Tellado*, 2011 WL 2746123, at *24-*25; *Harrington v. United States*, No. 3:08cv1864 (SRU), 2011 WL 1790175, at *7 n.3 (D. Conn. May 10, 2011). Therefore, the Court grants a COA with regard to Mr. McCoy's ineffective assistance of counsel claim, which is the only constitutional claim included in his amended petition.

**The Clerk is directed to enter judgment for Respondent and to close this case.**

IT IS SO ORDERED.

/s/    Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: August 4, 2011.**